1  AARON M. CLEFTON, Esq.  (SBN 318680)
   CLEFTON DISABILITY LAW
2  2601 Blanding Ave, Suite C
   Alameda, CA 94501
3  Telephone:  510/832-5001
   info@cleftonlaw.com
4
   Attorneys for Plaintiff
5  TANNER SLACK

6

             UNITED STATES DISTRICT COURT
7
             CENTRAL DISTRICT OF CALIFORNIA
8

9
   TANNER SLACK                       CASE NO. 2:25-cv-11744
10                                    <u>Civil Rights</u>
         Plaintiff,
11                                    **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**
12
        v.
13                                    1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**
14
   KATELLA DELICATESSEN-               2. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**
15 RESTAURANT-BAKERY, INC.
16
         Defendant.                   3. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**
17
18
                                      <u>DEMAND FOR JURY TRIAL</u>
19

20    Plaintiff TANNER SLACK complains of Defendant KATELLA

21 DELICATESSEN-RESTAURANT-BAKERY, INC., and alleges as follows:

22      1.     **PREFETORY STATEMENT:** Plaintiff is not a high frequency

23 litigant. This is his first and only ADA action to date.  Plaintiff's counsel has

24 represented over 150 unique plaintiffs, the vast majority of whom have filed less

25 than three ADA cases in their lifetimes. Plaintiff's counsel is not a high frequency

26 litigant firm under state law.

27      2.     **INTRODUCTION:** Plaintiff Tanner Slack is a disabled individual

28

                                    1

who uses the assistance of a service dog to ameliorate his disability. On May 17, 2025, Plaintiff and his girlfriend attempted to go out for brunch at Katella Bakery, Deli and Restaurant located at 4470 Katella Ave, Los Alamitos, California 90720. As is his usual practice, Plaintiff was accompanied by his service dog Jameson. Plaintiff entered the restaurant around 11:00 am, approached the host stand, and requested a table for two and a service inside the almost entirely empty restaurant. However, Defendant's employee refused to seat Plaintiff's party in the interior dining room of Katella Bakery, Deli and Restaurant due to the presence of his service dog. Defendant's representative informed Plaintiff that Defendant does not allow dogs to be inside the restaurant unless they are "seeing eye dogs." Defendant's representative then told Plaintiff that he could eat outside or leave.

3. Defendant denied disabled Plaintiff Tanner Slack equal access to Katella Bakery, Deli and Restaurant because he is a disabled individual who uses a service dog to assist him with tasks related to his disability. Further, Defendant's employee treated Plaintiff with disrespect due to the presence of his service dog, offering qualitatively different services to him than they give to other non-disabled patrons, including not allowing Plaintiff to sit inside the restaurant, and requiring that he either sit outside or leave.

4. The Defendant's decision to only allow service dogs to sit outside at its restaurant is patently discriminatory and did not afford equal access and enjoyment of its services. It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the

opportunity to obtain goods or services without the animal's presence.

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

5. DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

6. Katella Bakery, Deli and Restaurant has a special meaning for Plaintiff as he used to go there as a child with his mother, and he now wished to share that tradition with his girlfriend. Plaintiff intends to return to the restaurant in the future but cannot do so until the policies of the restaurant are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training. He has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate him for refusing him equal access to service at the restaurant because he is a disabled person who needs the assistance of his qualified service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Katella Bakery, Deli and Restaurant.

7. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343. This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

8. **VENUE:** Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is proper because the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

9. **PARTIES:** Plaintiff Tanner Slack is a "qualified" disabled person who uses the assistance of a service dog to ameliorate his disability. Plaintiff is a

veteran of the U.S. Army who has a 100% disability rating through the Veteran's Administration. He has been diagnosed with Major Depressive disorder, anxiety, and anxiety driven Post Traumatic Stress Disorder. When these conditions are not controlled Plaintiff is unable to leave his home, unable to perform activities of daily living, experiences hallucinations, and suicidal ideation. Plaintiff's disabilities substantially limit many of his major life activities including maintaining relationships, thinking clearly, and being out in public.

10. Plaintiff relies on his service dog, a St. Bernard named "Jameson" to assist him with certain tasks related to his disability including blocking, which involves Jameson putting himself in between Plaintiff and other people when he is in public, and providing deep pressure therapy. The latter Jameson can preform on command while Plaintiff is standing, sitting or lying down. Jameson was professionally trained by K9 Companions to be a service dog. Plaintiff and Jameson have been working together for seven years. Plaintiff and Jameson reinforce their training together daily. Plaintiff is a qualified person with a disability as defined under federal and state law. 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

11. Defendant KATELLA DELICATESSEN-RESTAURANT-BAKERY, INC., is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 4470 Katella Ave, Los Alamitos, California 90720, California, known as Katella Bakery, Deli and Restaurant.

12. Katella Bakery, Deli and Restaurant is a place of "public accommodation" and a "business establishment" subject to the requirements *among other things* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

13. **FACTUAL STATEMENT:** Plaintiff Tanner Slack has been working with his service dog Jameson for seven years. Jameson is a seven-year-old St.

Bernard who was trained to be a service dog since he was 4 months old. Jameson was professionally trained by K9 Companions to be a service dog. Plaintiff has also continued to train Jameson to serve his specific needs throughout their relationship. Including developing commands and hand gestures to tell Jameson to perform specific tasks. Jameson is trained to perform certain tasks including blocking (creating a barrier between Plaintiff and other people in crowded spaces or while he is waiting in line) and deep pressure therapy (hugging Plaintiff while he is standing or sitting or lying on Plaintiff while he is sitting or lying down) which helps to ground and calm Plaintiff when he experiences symptoms, reducing their effects on him.

14. Jameson is a working dog; he is not a pet. Plaintiff and Jameson have trained extensively together, and they supplement that training daily. Plaintiff takes Jameson almost everywhere with him in public. It is important they stay together as much as possible because (a) Jameson provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Jameson goes.

15. On May 17, 2025, at approximately 11:00 am, Plaintiff and his girlfriend, Dallas, arrived at Katella Bakery, Deli, and Restaurant intending to eat brunch together. As is his usual practice, Plaintiff was accompanied by his task trained service dog, Jameson.

16. Plaintiff dropped Dallas at the entrance before parking the vehicle. While Plaintiff parked, Dallas approached the host stand and informed Defendant's host that the dining party would be "two people and a service animal." The host told Dallas that per the manager's directive, "the dog has to sit outside." The host did not ask either of the two legally permitted inquiries regarding service animals, "Is the dog a service animal required because of a disability?" and "What work or task has the dog been trained to perform?".

17. After parking, Plaintiff entered the restaurant with Jameson and joined Dallas at the host podium. The host repeated to Plaintiff that service animals were only allowed on the patio and would not be permitted inside the restaurant.

18. While Plaintiff was interacting with the host at the podium, a male employee approached Plaintiff and identified himself as the manager of Katella Bakery, Deli and Restaurant. The manager informed Plaintiff that the restaurant "only recognizes seeing-eye dogs" as service animals which are allowed inside the restaurant and that all other dogs, including Plaintiff's service dog, Jameson, must remain outside on the patio.

19. Plaintiff informed the manager that this policy was contrary to federal ADA law, and he explained that only two questions may be asked to determine whether a dog accompanying a disabled individual is a service dog: (1) whether the animal is a service animal required for a disability, and (2) what tasks the animal is trained to perform.

20. The manager responded that he had "been doing this for 20 years," that Plaintiff was "not going to tell him what the law is." Then, the manager told Plaintiff, "If you have a problem, file a lawsuit."

21. After being denied indoor seating with his service dog, Plaintiff stepped outside the restaurant and contacted the Los Alamitos Police Department to report the ADA violation.

22. Sergeant Martinez of the Los Alamitos Police Department came to the restaurant and spoke with Plaintiff about what had occurred. Sergeant Martinez then entered the restaurant to speak with the manager.

23. When Sergeant Martinez returned, he informed Plaintiff that the manager had changed his explanation, stating that the service dog could not be inside the restaurant because it was "a fire hazard." Plaintiff explained to Sergeant Martinez that Jameson could safely remain under the table of a booth without impeding access to restaurant employees or other patrons. Plaintiff also stated that

there were open booths available. Sergeant Martinez advised Plaintiff that the manager was not going to allow Jameson inside the restaurant under any circumstances but stated that he would document the incident.

24. At this point, it was clear to Plaintiff that he would not be able to dine inside Katella Bakery, Deli and Restaurant as planned, so they left.

25. Plaintiff has a desire to return to Katella Bakery, Deli and Restaurant to enjoy the food. However, Plaintiff is afraid to go back to the restaurant because his previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal access laws. It is also clear that Defendant's employees have not received training about how to interact with disabled patrons who rely on service dogs for assistance.

26. Plaintiff wishes to return to Katella Bakery, Deli and Restaurant, but only *after* Defendant has implemented proper service animal policies and training of its staff. Plaintiff is deterred from returning to the restaurant until these policies and training are in place.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
## (42 U.S.C. §§ 12101 *et seq.*)

27. Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 26, above, and incorporates them here by reference as if separately repled hereafter.

28. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing

existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

29. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

30. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

31. Katella Bakery, Deli and Restaurant is a public accommodation under Title III of the ADA.  42 U.S.C. § 12181(7)(B).

32. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

33. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service-animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

34. Defendant has a policy and practice of denying access to patrons of Katella Bakery, Deli and Restaurant with service animals. The Defendant's decision to only allow service dogs to sit outside at its restaurant contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.
- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

35. On information and belief, as of the date of Plaintiff's most recent visit to Katella Bakery, Deli and Restaurant on or about May 17, 2025, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

36. In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

> It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

37. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant." 42 U.S.C. § 12181(7)(B).

38. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies,

1  practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

39. On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

40. Defendant's actions continue to deny Plaintiff's right to full and equal access by deterring Plaintiff from patronizing Katella Bakery, Deli and Restaurant and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

41. Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of

sections 12182 and 12183 of this title. On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters. Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

42. Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize Katella Bakery, Deli and Restaurant, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

**SECOND CAUSE OF ACTION:
DAMAGES AND INJUNCTIVE RELIEF
FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC
FACILITIES IN A PUBLIC ACCOMMODATION
(Civil Code §§ 54 *et seq.*)**

43. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 42 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

44. Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public

facilities, and other public places." Civil Code § 54(a).

45. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

46. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

47. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

48. Katella Bakery, Deli and Restaurant is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

49. Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based on

Defendant's illegal prohibition of his legally protected use of his service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he seek to return to these facilities. Plaintiff cannot return to Katella Bakery, Deli and Restaurant until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination daily since May 17, 2025, all to his statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

50. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

51. Plaintiff wishes to return to patronize Katella Bakery, Deli and Restaurant but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize Katella Bakery, Deli and Restaurant and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

52. The acts of Defendant has proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks

injunctive relief as to Defendant's inaccessible policies.  As to Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

53.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply immediately with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

54.     **DAMAGES:** Because of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as stated below.  Defendant's actions and omissions to act constitute discrimination against Plaintiff because he was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize Katella Bakery, Deli and Restaurant and will continue to cause him damages each day these barriers to access and policy barriers are still present.

55.     Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

56.     **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

57.     Plaintiff suffered damages as above described as a result of Defendant's violations.  Damages are ongoing based on his deterrence from returning to Katella Bakery, Deli and Restaurant.

WHEREFORE, Plaintiff prays for relief as stated below.

### THIRD CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

58.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 57 of this Complaint

and incorporates them herein as if separately re-pleaded.

59. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

60. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

61. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

62. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

63. The actions and omissions of Defendant as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for

1  statutory and compensatory damages to Plaintiff, according to proof.

2        64.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions and
3  conduct, Plaintiff has been required to incur attorney fees, litigation expenses and
4  costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of
5  law protecting access for disabled persons and prohibiting discrimination against
6  disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees,
7  litigation expenses and costs under California Civil Code sections 51 and 52.
8  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its
9  facilities and policies accessible to all disabled members of the public, justifying
10 "public interest" attorney fees, litigation expenses and costs under California Code
11 of Civil Procedure section 1021.5 and other applicable law.

12       65.    Plaintiff suffered damages as above-described as a result of
13 Defendant's violations.

14       WHEREFORE, Plaintiff prays for relief as stated below.

## PRAYER

16 Plaintiff has no adequate remedy at law to redress the wrongs suffered as
17 stated in this Complaint.  Plaintiff has suffered and will continue to suffer
18 irreparable injury because of the unlawful acts, omissions, policies, and practices
19 of Defendant as alleged herein, unless Plaintiff is granted the relief he requests.
20 Plaintiff and Defendant have an actual controversy and opposing legal positions on
21 Defendant's violations of the laws of the United States and the State of California.
22 The need for relief is critical because the rights at issue are paramount under the
23 laws of the United States and the State of California.

24       WHEREFORE, Plaintiff Tanner Slack prays for judgment and the following
25 specific relief against Defendant:

26       1.    An order enjoining Defendant, its agents, officials, employees, and all
27 persons acting in concert with them:

28           a.  From continuing the unlawful acts, conditions, and practices described

          in this Complaint;

    b. To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded should he desire to enter and use the services of Katella Bakery, Deli and Restaurant;

    c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction under ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4. An award of prejudgment interest under Civil Code § 3291;

5. Interest on monetary awards as permitted by law; and

6. Grant any other relief that this Court may deem just and proper.

Date: December 11, 2025                    CLEFTON DISABILITY LAW

                                               */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
TANNER SLACK

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: December 11, 2025                    CLEFTON DISABILITY LAW

                                               */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
TANNER SLACK